*Tagged Opinion*



**ORDERED in the Southern District of Florida on May 8, 2018.**

_____
**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO. 17-18764-BKC-LMI |
| LOUISE HENIG MUOIO, | Chapter 13 |
| Debtor. | |
| _____/ | |

## MEMORANDUM OPINION ON ORDER GRANTING
## MOTION TO VALUE

This matter came before me on Motion of the Debtor, Louse Henig Muoio (the "Debtor") to Value and Determine Secured Status of Lien on Real Property held by Carmel at the California Club Property Owners Association, Inc. (ECF # 15) (the "Motion to Value") seeking to strip off the lien of the referenced association encumbering the Debtor's homestead located in Miami-Dade County (the "Property").

The issue presented is whether a Declaration of Covenants, Restrictions and Easements (the "Declaration of Covenants") constitutes a declaration of

1

condominium for purposes of the priority provisions of Fla. Stat. §718.116(5)(a). Having reviewed the applicable statutes, documents, pleadings[1] and case law, I find that the Declaration of Covenants is not a declaration of condominium and therefore, Carmel at the California Club Property Owners Association, Inc. (the "Master Association") is not entitled to the priorities of section 718.116(5)(a). Accordingly, the Debtor's Motion to Value is Granted.

### FACTS

The Debtor filed this Chapter 13 case on July 13, 2017 (the "Petition Date"). The Motion to Value alleges that, because any lien claimed by the Master Association is behind first and second mortgages encumbering the Property, the lien of the Master Association can be stripped off. The Master Association filed its Objection to the Motion to Value (ECF #27), arguing that its lien cannot be stripped because, by virtue of the Declaration of Covenants,[2] the lien of the Master Association has priority over a second mortgage encumbering the Property and therefore, cannot be stripped off.[3]

The California Club is a community in North Dade that was apparently developed around 1983. Two documents that inform the issue before me were recorded in connection with that development. The first is a Declaration of

---

[1] Subsequent legal memoranda were filed, and further argument was held.
[2] In its proof of claim, the Master Association attached a Claim of Lien for Assessments (the "Claim of Lien") which was recorded on March 12, 2015. In its Claim of Lien, the Master Association does not refer to the Declaration of Covenants, but rather it refers to the Declaration of Condominium (hereinafter defined). However, the Objection to the Motion to Value and later memorandum of law references the Declaration of Covenants as the document on which the Master Association relies.
[3] There is no dispute that, if the lien of the Master Association has priority over the lien of the Second Mortgage, then the Motion to Value must be denied.

2

Condominium with an unknown recording date, but presumably recorded on or about October 26, 1983[4] (the "Declaration of Condominium"). Although a copy of the Declaration of Condominium was not provided to the Court, the purpose of a declaration of condominium is to establish the condominium described therein.

The second document is the Declaration of Covenants originally recorded on October 26, 1983.[5] The Declaration of Covenants established the Master Association for the purpose of "owning, maintaining and administering the Common Areas, and administering and enforcing the covenants, restrictions and easements" created through the Declaration of Covenants. The Declaration of Covenants provides that every owner of a condominium unit is obligated to pay both regular and special assessments and that the obligations (including attorney fees) "shall be a charge on the land and shall be a continuing lien upon the property against which such assessment is made." Declaration of Covenants, Article VII.

According to the Motion to Value, the Property is encumbered by two mortgages. The first mortgage is held by JP Morgan Chase Bank, N.A. (the "First Mortgage"). The First Mortgage was recorded on February 7, 1994, and, according to the proof of claim filed by JP Morgan Chase Bank, N.A. the amount secured by the First Mortgage as of the Petition Date was $20,503.75. The second mortgage is held by Wells Fargo Bank, NA (the "Second Mortgage"). The Second Mortgage was recorded on January 27, 2007, and, according to the proof of claim filed by Wells

---

[4] The Declaration of Condominium is recorded in the Official Records Book 13263, Page 461 of the Public Records of Miami Dade County, Florida. (*See* ECF #15)
[5] The Declaration of Covenants is recorded in the Official Records Book 11948, Page 1653 of the Public Records of Miami Dade County, Florida. (*See* ECF #49-1)

Fargo Bank, the amount secured by the Second Mortgage as of the Petition Date was $100,074.19. The Master Association has alleged that the Debtor has not paid, on a regular basis, the assessments due since November of 2008, and, so, on March 12, 2015, prior to bankruptcy, the Master Association recorded its Claim of Lien.[6]

The Motion to Value alleges that on the Petition Date the value of the Property was $110,880.00. Consequently, the Debtor argues, because the Claim of Lien was recorded after the Second Mortgage was recorded, and because the combined amounts secured by the First Mortgage and Second Mortgage exceed the Property's value, the Master Association's lien can be stripped and its $20,725.18 claim treated as unsecured. The Master Association argues that, by virtue of Fla. Stat. §718.116(5)(a), its lien relates back to the recording of the Declaration of Covenants and takes priority over the Second Mortgage.

While the parties have both cited case law, the resolution of this issue is strictly a matter of statutory interpretation.[7] Subsection 718.116(5)(a) states

> (5)(a) The association has a lien on each condominium parcel to secure the payment of assessments. Except as otherwise provided in subsection (1) and as set forth below, the lien is effective from and shall relate back to the recording of the original declaration of condominium, or, in the case of lien on a parcel located in a phase condominium, the last to occur of the recording of the original declaration or amendment thereto creating the parcel. However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien in the public records of the county in which the condominium parcel is located. Nothing in this subsection shall be construed to bestow upon any lien, mortgage, or certified judgment of

---

[6] *See* n. 2 *supra*.
[7] Both parties cited case law in support of their argument that the Master Association was or was not an association for purposes of Chapter 718. However, all of those cases predated, and have been superseded by, the statutory change to the definition of "association" under Chapter 718. Moreover, the issue before me is not whether the Master Association is or is not an association under Chapter 718, but rather whether a document that does NOT create a condominium can, nonetheless, rely on the provisions of subsection 718.116(5)(a).

4

> record on April 1, 1992, including the lien for unpaid assessments created herein, a priority which, by law, the lien, mortgage, or judgment did not have before that date.
>
> Association is defined in the statute as follows:
>
> "Association" means, in addition to any entity responsible for the operation of common elements owned in undivided shares by unit owners, any entity which operates or maintains other real property in which unit owners have use rights, where membership in the entity is composed exclusively of unit owners or their elected or appointed representatives and is a required condition of unit ownership.

Fla. Stat. §718.103(2). Based on the 1991 expansion of the statutory definition of "association", the Master Association qualifies as an "association" under Chapter 718 so long as only unit owners are members of the Master Association and membership is a condition of ownership of the units.[8]

Assessment is defined as "a share of the funds which are required for the payment of common expenses, which from time to time is assessed against the unit owner." Fla. Stat. §718.103(1). So clearly, the obligations owed by the Debtor to the Master Association are assessments. However, the priority provisions of subsection 718.116(5)(a) state that the relation back date runs from the date of the recording of the declaration of condominium. Chapter 718 defines "declaration of condominium" as "the instrument or instruments by which a condominium is created, as they are from time to time amended." Fla. Stat. §718.103(15). The Declaration of Covenants did not create the condominium[9] and therefore, it's recording, and the rights of the

---

[8] The Debtor has not argued that the Master Association has members other than unit owners, and the Declaration of Covenants requires that all members be owners and vice-versa.

[9] The statutory definitions highlight the distinctions. "'Condominium' means that form of ownership of real property created pursuant to this chapter, which is comprised entirely of units that may be owned by one or more persons, and in which there is, appurtenant to each unit, an undivided share in common elements." Fla. Stat. §718.103(11);

5

Master Association arising thereunder do not relate back such that the lien of the Master Association takes priority over the lien of the Second Mortgage.

## CONCLUSION

Because the Master Association's lien is subordinate to the liens of the First Mortgage and the Second Mortgage, it is ORDERED as follows:

1. The Debtor's Motion to Value is Granted.

2. The Master Association's lien is stripped off, and shall be deemed void and extinguished automatically without further order of the Court, upon entry of the Debtor's discharge in this chapter 13 case. If this case is converted to a case under any other chapter or if the chapter 13 case is dismissed, the Master Association's lien will no longer be considered void and shall be restored as a lien on the Property.

3. The Property may not be sold or refinanced without proper notice and further order of the Court.

4. Notwithstanding the foregoing, this Order is not recordable or enforceable until the Debtor receives a discharge in this chapter 13 case.

5. Nothing in this Memorandum Opinion is intended to or shall impact the *in personam* liability of any subsequent owner of the Property to the extent provided under non-bankruptcy law.

# # #

---

"'Condominium parcel' means a unit, together with the undivided share in the common elements appurtenant to the unit." Fla. Stat. §718.103(12); "'Condominium property' means the lands, leaseholds, and personal property that are subjected to condominium ownership, whether or not contiguous, and all improvements thereon and all easements and rights appurtenant thereto intended for use in connection with the condominium." Fla. Stat. §718.103(13).

Copies furnished to: Stephen Bruer, Esq., Attorney for the Debtor

*Attorney Bruer shall serve a conformed copy of this order upon all interested parties and shall file a Certificate of Service with the Clerk of the Court.*